## THE MAYOR, &c., OF THE CITY OF NEW YORK a. CONOVER.

*New York Common Pleas ; Special Term, August,* 1857.

INJUNCTION.—PROCEEDINGS AT LAW.—SECOND APPLICATION.—RESTRAINING COUNSEL.

An injunction may be granted to restrain proceedings pending before a magistrate out of court, having, in the capacity in which he is acting, no equity powers.

An injunction should not in general be granted to restrain an intended trespass.

But where, in an action by a municipal corporation, it appears that defendant, under claim of title to a corporate office, threatens to take possession of books relating to that office,—that defendant has not in law a title to the office,—that the books are of a value to the corporation which cannot be estimated in money, —and that no adequate compensation in damages can be awarded for the probable injury to the corporation through the delay of public business, resulting from the taking of the books, or for their loss if they should be destroyed,—an injunction may properly be granted.

After an application for an injunction has been denied, another application to another court on the same facts, is wrong, and should not be sanctioned.

But if the complaint in the second suit avers facts not in existence when the first application was made, the decision on the first motion is no bar to the second.

In an action brought to restrain proceedings at law, it is improper to enjoin the counsel employed in those proceedings; unless something more is alleged against him than the prosecution of his client's rights.

●

Orders to show cause why an injunction should not issue.

This action was brought by the mayor, aldermen, and commonalty of the city of New York against Daniel D. Conover, Charles Devlin, and James C. Willet, sheriff of the city and county of New York.

The complaint was as follows ; being verified by the corporation counsel :—

TITLE OF THE CAUSE.

The complaint of the plaintiff above named shows :—

*First*—That the plaintiffs have been for a long time, and now are a municipal corporation, holding, under charter and otherwise, large and valuable powers, property, and franchise.

*Second*—That there is a department in said municipal corporation which is called the street commissioner's department, the chief officer of which is called and known as the street commissioner.

*Third*—That connected with and appertaining to such department are various books, maps, records, documents, and other property and papers, to which access is required to be had daily, during business days, for the administration of the duties of such department ; that such books, maps, records, documents, and other papers belong to, and are the exclusive property of said plaintiffs, and the street commissioner has no other right to the

control or use of the same, save such as arises from his official character.

*Fourth*—That on the 9th of June, A. D. 1857, Joseph S. Taylor, who up to that time held the office of street commissioner aforesaid, died. That at the time of his decease there was an office connected with the department aforesaid, the incumbent of which was called and known as the deputy street commissioner. That such office was duly created by ordinance of the corporation aforesaid, and at the decease of said Taylor, Charles Turner held such office, and was deputy street commissioner of the city of New York.

*Fifth*—That from the decease of said Taylor until the 16th day of June, 1857, the said Turner acted as street commissioner, and performed the duties of street commissioner, having authority to do so under ordinances duly passed by said corporation, and in such capacity and the performance of such duties had and enjoyed the use of the aforesaid books, maps, records, documents, and other property and papers.

*Sixth*—That at the date last-mentioned, the mayor of the city of New York, with the consent of the Board of Aldermen, duly appointed Charles Devlin street commissioner in place of said Taylor, deceased, and thereupon said Devlin succeeded to and in fact obtained the use and enjoyment of the aforesaid books and other property, as above described, and that said Devlin has continued such use and performed his duties as street commissioner, from the time of his appointment to the date of the jurat to this complaint, under the free sanction and consent of the plaintiffs, who have recognized and still recognize him as such street commissioner in law and in fact.

*Seventh*—That one Daniel D. Conover, claiming to be street commissioner of the city of New York under some appointment, has commenced against said Devlin a proceeding under the Revised Statutes of this State, to compel the delivery to the said Conover of the aforesaid books, maps, records, documents, and papers; that such proceeding was so commenced before Hon. Charles A. Peabody, who holds the office of Justice of the Supreme Court of the State of New York; and the said Peabody has made an order that said Devlin deliver up said books and other things to said Conover, or in default thereof, be committed to jail until he delivers the same, or shall be discharged by law.

*Eighth*—That the said Devlin has duly obtained an allowance of a writ of *certiorari* addressed to the aforesaid Peabody, requiring him to certify the record of the proceedings aforesaid, and all the testimony, orders, processes, and acts therein, to said Supreme Court at the next general term thereof on the second Monday of September, A. D. 1857. That the allowance of such writ is endorsed thereon by Hon. Henry E. Davies, one of the justices of the said Supreme Court, and the writ with the allowance thereon has been delivered to said Peabody.

*Ninth*—That notwithstanding the issuing, allowance, and service of such writ, the said Peabody is about to issue warrants in the proceedings aforesaid, one to commit said Devlin to jail until he delivers up said books and other things, or is otherwise discharged by law, and the other directing a search of certain apartments belonging to the plaintiffs for such books and other things, and that the same when found be seized and taken before said Peabody.

*Tenth*—That said warrants have been, or are about to be, delivered to James C. Willet, sheriff of the city and county, to be executed, and the said Conover has required that the same should be executed, and the sheriff threatens to execute the same.

*Eleventh*—That the seizure and removal of said books, maps, records, documents, and papers under said warrant would be a very serious interruption of the business of the aforesaid department, and would render impossible a full discharge by said Devlin of the duties of the office of street commissioner, and greatly impede, not only the performance by said corporation of its duties to the public, but the enjoyment by the public of the means of access to said books and other property necessary to the protection of public interests. That such seizure and removal would also, if followed by a delivery of the property to said Conover, put it in his power to involve the plaintiffs in liabilities, difficulties, and litigations, by reason of his proceedings under the pretended claim of being street commissioner.

*Twelfth*—That the aforesaid books, maps, records, documents, and papers, have a peculiar value as archives of a public office, and that their constant use is required to enable the plaintiffs to exercise their corporate functions, and to perform their corporate duties. And that no damages to be assessed in any suit or proceeding brought by these plaintiffs, for any taking of such ar-

chives or other property under the aforesaid warrant, would afford adequate compensation for the injury occasioned by such taking.

*Thirteenth*—That the plaintiffs have never in any way recognized the claim of said Conover to the office of street commissioner of the city of New York, but always have repudiated, and now repudiate the same.

Whereupon the plaintiffs pray the judgment of this court, declaring said warrants, and each of them, to be inoperative, and that the defendants Conover and Willet, their agents, attorneys, and all persons acting for or under them, may, by the order of this court, be perpetually restrained from taking any step whatever to have said warrants, or either of them, executed, and from removing or causing to be removed, said books, maps, records, documents, and other property and papers, or any or either of them, from the place or places where the same may be when such order is made, and from interfering with the same in any manner or way whatever; and that the said Devlin may be in like manner enjoined from delivering said property to the said Conover, or any one claiming under or for him, and that said Conover and Willet be restrained from taking any steps whatever to obtain possession of said property, or of any part thereof, but without prejudice to the right of said Conover to have the said *certiorari* returned or otherwise legally disposed of, and to obtain a judgment thereupon, or to prosecute a *quo warranto* to obtain possession of the aforesaid office of street commissioner, and allowing to said plaintiffs such further relief or such other relief, or both, in the premises, as may be just, and that in the mean time, and until the further order of this court, said defendants may be respectively in like manner restrained by preliminary or provisional injunction order.

                    RICHARD BUSTEED, *Attorney for Plaintiffs.*
        VERIFICATION.

Upon this complaint, an order to show cause, with a temporary injunction, was granted, as follows:—

    TITLE OF THE CAUSE.

        On reading the complaint in the above entitled action, and on hearing Mr. Busteed, of counsel for the plaintiffs, it is ordered that the defendants herein be restrained until the hearing and determination of the order to show cause hereinafter contained, as follows: that is to say, that the said defendants,

Daniel D. Conover and James C. Willet, their agents, attorneys, deputies, constables, and all persons acting for or under them, or either of them, from removing, or causing to be removed, the books, maps, records, documents, and other property and papers in the same complaint mentioned, or any or either of them, from the place or places where they or either of them may be, and from interfering with the same in any manner or way whatever, and the said Charles Devlin from delivering said property, or any part thereof, to the said Conover, or any other claiming under or for him. And let the defendants show cause before this court, at a special term thereof, to be held at the City Hall of the city of New York, on the 24th day of July, 1857, in the forenoon, why an order should not be made joining the defendants as above mentioned, until the final judgment in this action, or why some other or further order for the benefit of the plaintiffs should not be made therein.

D. P. INGRAHAM,<br>
First Judge of New York Common Pleas.

A supplemental complaint was subsequently filed, adding John R. Farrington, Henry Bertholf, and David Dudley Field as parties defendant. The first two of these defendants were officers of the court in whose hands the process for obtaining the papers in question was placed for execution, and the latter was the counsel employed by the defendant Conover in conducting the proceedings sought to be enjoined.

On the original and supplemental complaints, the following order to show cause was granted :—

TITLE OF THE CAUSE.

On reading the complaint in this action, supplemental to the original complaint of the same plaintiffs against the first three defendants above named, together with the affidavit of Richard Busteed, duly verifying the same; and on motion of Mr. Busteed, attorney for the plaintiffs, it is ordered that the said plaintiffs have leave to file and prosecute the said supplemental complaint against the above-named defendants; and upon the said complaint and affidavit it is further ordered that the said defendants, John R. Farrington, Henry Bertholf, and David Dudley Field, show cause, at a special term of this court, to be

held at the City Hall of the city of New York, on the 23d day of July, instant, at ten o'clock in the forenoon of that day, why they and each of them, their attorneys and agents, and all persons acting for or under them, should not be restrained by the injunction order of this court from removing, or causing to be removed, the books, maps, records, documents, and other property and papers in the said supplemental complaint mentioned, or any or either of them, and from interfering with the same or any of them in any manner or way whatever; and until the decision of said court granting or refusing such injunction in the premises, it is ordered that said Farrington, Bertholf, and Field be, and they are hereby, restrained as aforesaid.

D. P. INGRAHAM,<br>
First Judge of New York Common Pleas.

The cause now came on for hearing on these two orders to show cause.

*D. E. Sickles,* for the plaintiffs.—I. The jurisdiction of equity to restrain an interference with particular chattels is founded on the nature of the damage. In all cases of writings having a specific and peculiar value, the principle of irreparable damage applies. (*Jeremy on Equity Jurisdiction, pt.* 2, *ch.* 4, § 2; *Story's Eq. Jur.,* §§ 703, 709, 710, 906; *Wat. Eden. on Inj.,* 367, 368, and *note.*)

II. Perhaps equity ought not commonly to interfere to prevent a threatened trespass, even in respect to papers; because the party in possession may resist by force. But where process of a judicial officer is about to be used to sanction the act, and a regularly constituted executive agent of the law, as a sheriff or constable, is to be put in motion by such process, an injunction is highly proper. 1. The sheriff, or a constable, may be justified by the process, though on the prior parts of the record it should appear that the tribunal had no jurisdiction. 2. Such sheriff, with a process regular upon its face, may command the power of the county, and with strong arm rightly put down all opposition.

III. The duty to resist a trespass by force cannot be charged upon a municipal corporation. It can only act by agents, and such agents may not be willing to incur the risk of a conflict.

The Mayor, &c., of the City of New York a. Conover.

IV. The counsel who, prosecuting an unlawful proceeding for a client, insists and publicly promulgates the doctrine that no one not named as a defendant in the injunction is affected by it, should be included as a party.

*William Curtis Noyes*, for defendants.

*David Dudley Field*, on the same side.—I. This is a motion for an injunction in aid of a *certiorari* from the Supreme Court. The Supreme Court is competent to take care of itself, and this court has no jurisdiction to aid in enforcing the process of that court.

II. If this court could aid the Supreme Court in enforcing its process, the occasion for its aid has ceased, because the *certiorari* has been superseded.

III. The allegation on which the injunction was granted, that is, that Mr. Justice Peabody intended not to obey the *certiorari*, is an allegation offensive to that officer, and one to which another court will not listen as cause for an injunction. If it does, the comity of courts will have been disregarded, and confusion in the administration of justice must follow.

IV. The granting of an injunction rests in the sound discretion of the court. Mr. Conover is in possession of the office of street commissioner. If he cannot have the books and papers of the office, he will be greatly embarrassed in the performance of its duties. This embarrassment the court will avoid by discharging the injunction forthwith.

V. It has been said that the allegation of the issuing of a *certiorari* is the ground on which the injunction is claimed. If there be any other ground, it has already been considered in the Supreme Court on the motion before Mr. Justice Roosevelt for an injunction, which motion was carefully examined and denied.

VI. The case made by the complaint is wholly untenable. 1. The books and papers of the street commissioner's office are public records. They are not the private property of the corporation in any other sense than this. The corporation could not take them from the use of the citizens generally, nor from the custody of the street commissioner. 2. The street commissioner's is an office created by the statute of the State. The duties of

the office cannot be essentially impaired by the Common Council; nor can that body take from it the means to carry on its business. 3. The proceeding before Mr. Justice Peabody was one provided by statute, that the books and papers of an office may be always at the control of the incumbent. To allow another party to come in and interfere with them, on the ground that he was the ultimate proprietor of the records, would defeat most of the applications. It would enable the Attorney-General at all times to prevent the incumbent of a State office, as the controller or secretary of state, from obtaining the books of his office, and it would also enable the counties and cities to counteract the proceedings in the case of county or city offices. 4. The corporation was in fact a party to the proceedings before the judge. The counsel to the corporation conducted them, having other counsel associated with him. 5. If the present complaint be true, the case is one merely of trespass—an injunction will not lie, to restrain a trespass (7 *Johns. Ch.*, 315; 3 *Paige*, 213; 2 *Barb. Ch.*, 101; *Willard's Eq. Jur.*, 382). 6. This is an attempt to interfere with the determination, by a judge of the Supreme Court, of a proceeding pending before him. Mr. Justice Peabody has heard the case, and is as competent to decide it as any other judicial officer. 7. Mr. Conover has been adjudged to be the street commissioner of the city of New York, *de facto*, and entitled to the books and papers; and even if he had not, this court has no jurisdiction to try the title to an office. That can only be done by *quo warranto* in the Supreme Court. 8. The proceedings to compel the delivery of official books to a successor in office are intended to be as summary as possible. An interference with them by any other tribunal would tend to defeat the policy of the Legislature. These considerations induced the Supreme Court to dissolve an injunction once granted, and to supersede a *certiorari* which it had awarded, though the proceedings were before one of their own body; and there is more reason why this court should be influenced by them.

INGRAHAM, F. J.—The plaintiffs, on filing their complaint, obtained an order for a temporary injunction, restraining the defendants. Conover and Willet from removing the books and papers from the street commissioner's office, and from interfering

therewith, and Devlin from delivering the same to Conover or any one on his behalf, together with an order for the defendant to show cause why such injunction should not be continued. The complaint showed that the books and papers referred to were the exclusive property of the plaintiffs; that Taylor, who was street commissioner, died, and that upon his death the deputy street commissioner, Turner, acted in his place, and while so acting had the charge of such books and papers; that Devlin was so appointed by the Mayor and Board of Aldermen, and entered upon the duties of the office, and was in possession of such books and papers, and as such officer was recognized by the plaintiffs; that the defendant Conover, claiming to be street commissioner, had commenced proceedings against Devlin to obtain possession of such books, &c., and that the judge before whom the proceedings were pending had made an order that Devlin deliver over the same to Conover; that warrants were about to be issued to enforce such order; that the seizure and removal of such books, &c., would be a serious interruption of the business of the department, and greatly impede the performance of its duties by the corporation to the public, and might involve the plaintiffs in liabilities and litigation; that the books, &c., were valuable, and the plaintiffs required the constant use of them to enable them to perform their corporate duties, and that no damages could be assessed which would form an adequate compensation for the injury occasioned by the taking. The complaint asked for an injunction restraining the defendants from taking the said books, &c.

Considerable discussion has taken place as to the time when this injunction was allowed. A previous injunction had been applied for and obtained during the previous week, which was returned to me and cancelled, on the supposition, as the counsel stated, that the allowance of the *certiorari* rendered its use unnecessary. Afterwards, the second complaint was submitted to me and a new injunction asked for, which was signed on the day on which it bears date. The complaint contains the statement in regard to the *certiorari* which rendered the injunction necessary for the protection of the plaintiff's interests. That statement was, that the warrants were about to be issued and the property delivered to Conover, notwithstanding the allowance of the *certiorari*. Upon such application, every thing contained in the injunction which could be construed as relating to the

proceedings before the court or Mr. Justice Peabody was stricken out, and the order of injunction solely directed to the defendant for the express purpose of avoiding any order which could in any way be construed as applying to that judge, or to his action in the proceeding before him.

It has, however, been the custom of courts of equity, both in England and this country, to stay proceedings in another court by injunction. The books are full of cases of this character, and the right to do so has never been questioned. With much more propriety might such an order be made in regard to proceedings pending before a magistrate out of court, who, in the capacity in which he was acting, had no equity powers, and could not grant the relief which was asked for.

The right of the plaintiffs, upon the state of facts disclosed in the complaint, appeared to me to be clear, and entitling them to the relief sought. Is there any thing in the defendants' affidavits changing that view of the plaintiffs' claims?

The property is averred to be the exclusive property of the plaintiffs, and this is not denied, other than by an allegation of the defendant that he is advised and believes the books, &c., are not the exclusive property of the plaintiffs, but are public records, which the plaintiffs have no right to take from the custody of the street commissioner. The defendant also asserts his right to the office, and he denies any right on the part of Devlin to execute the duties of the office. I am bound, on these papers, to assume that the books are the property of the plaintiffs. This fact is positively sworn to on their behalf, while the denial of it is merely on advice and belief. If I am allowed to inquire beyond the papers, I think there can be no doubt that very many of the books and papers in the street commissioner's office are the exclusive property of the plaintiffs, paid for out of the treasury, and not by assessment, while a great mass of the books and papers are necessary for the collection of moneys due to the city, the loss of which would occasion great, if not irreparable pecuniary damage to the public interests.

The views I entertain of defendant Conover's claim to hold the office have been fully stated by me in the matter of Devlin on habeas corpus,* and I refer to the opinion delivered therein, with

---

* Reported *Post,* 281.

the bare statement that the appointment under which he claimed to hold the office was not, in my judgment, valid, and conferred no right thereto.

It is said that the contemplated act of taking possession of the books by Conover was a mere act of trespass, and as such equity did not interfere, but that the party in possession had a right to resist by force and protect that right. In ordinary cases of trespass such a rule is correct. Equity does not, and ought not, to interfere to prevent every trespass in regard to personal property between individuals, when the matter in controversy is small in amount, or can be paid for by damages in an action for that trespass. But I do not consider that rule as applicable even to a case of a contemplated trespass where the injury would be great, where the property was of a peculiar value, and the damages such that they could not be compensated for by any remedy at law. In Jerome v. Ross (7 *Johns. Ch. R.*, 315), the chancellor says—"In ordinary cases the remedy of trespass has been found amply sufficient for the protection of property, and I do not think it advisable to introduce the chancery remedy as its substitute, except in strong and aggravated instances, where the mischief is remediless." Again he says—"I do not know of a case where an injunction has been granted merely because the defendant was a trespasser without showing that the property was of peculiar value, and could not admit of due recompense. In ordinary cases the damages assessed by a jury will be adequate for a check and for a recompense." In Erpstein v. Berg (13 *How. Pr. R.*, 91), Judge Davies granted an injunction merely to restrain the sale of some furniture in the defendant's possession, and upon an argument refused to vacate it.

We are told that this being a mere trespass, the plaintiffs should be left to a remedy by law, or to defend their possession by force. I have already suggested one reason why an action at law is no remedy. The value of these books and papers to the city cannot be estimated. The large amounts due them on assessments, the evidence for which is only to be found in them, the liens which exist on real estate for assessments, and the evidence of sales of lands for a long period back, the records of which are to be found only here; the regulations of the streets in the city, and various other matters to which it is now unnecessary to refer, conclusively establish the great value of these

books and papers to the plaintiffs peculiarly, as well as the public, as containing evidence affecting the real estate of this city to a very great extent. The complaint also shows that the removal of them from the office would greatly impede the public business, and that no adequate compensation could be obtained for the loss or destruction. That the plaintiffs are called upon, under such circumstances, either to resort to an action at law for damages, or to resist the taking of them by force, I cannot accede to. It is apparent, from what has already been stated, that an action at law would give no adequate remedy. As to the propriety of compelling the plaintiffs to resort to force to defend their possession, instead of asking the aid of the court, I think there can be no hesitation. Judge Roosevelt says, in the opinion delivered by him, "The plaintiffs being, as they allege, in possession, can defend themselves, in the ordinary course of law, against any illegal disturbance. They can resort to the criminal magistrate, or to the sheriff or his deputies, if they are right. Again, if the books are the private property of the plaintiffs, they must be protected by the same means, remedial or preventive, as apply to cases of assault and battery, and other threatened trespasses of a like nature." I can hardly suppose that learned justice intended to be understood as recommending the plaintiffs to resort to open violence in order to retain the possession of this property. Redress by the ordinary forms of law would be inadequate, and I should be very unwilling to hold that the public authorities would be justified in involving the city in disturbances such as have already taken place in regard to the possession of this office. We have already seen the effects of such attempted employment of force in the maintenance of rights, either supposed or real; and where the evils complained of can be remedied by the simple mandate of a court, quietly and peaceably issued and enforced, in a case involving interests as important as are embraced in this property, I think there should be no hesitation as to the course to be adopted.

It is also objected that this injunction is an interference with the decision of another tribunal. That decision was made between other parties. The plaintiffs had no right to defend their possession there. It could not have been brought in issue. They not being parties, have no right of reviewing the decision of the magistrate, and they are in nowise bound by that decision. It

would be injustice to say to a party claiming property which is conceded to belong to him, that the right of a third person to that property has been decided by a magistrate in a proceeding between him and others, and therefore you can have no protection from the courts. The case presents this state of facts: The plaintiffs, claiming to be the owners of property of great value, the loss or destruction of which could not be repaired, and for which no adequate remedy can be obtained, ask from a court of equity an order of injunction to prevent the defendant from taking that property from the place in which they have been deposited, and from their possession and control. I see no reason why such relief should not be granted under the circumstances stated in the complaint.

There is one question yet remaining to which I have not yet referred. It is as to the answer which the defendants set up to the granting of this motion by reason of the alleged adjudication by Judge Roosevelt of the same question before him on the complaint filed in the Supreme Court praying for a similar injunction. That such a practice of renewing an application to one court after it has been denied in another is wrong, and should not be sanctioned, is undoubtedly correct, even if the first action is subsequently discontinued, although in the ordinary conducting of legal proceedings such a rule does not always prevail. A party may bring an action in one court and may fail in making out a case to entitle him to judgment; and such failure is not of course a bar to a second suit. But on motions for injunctions, if the complaint in the second action avers other facts not in existence at the time the first motion was made, the decision on the first motion forms no bar to the subsequent one.

The complaint submitted to Judge Roosevelt only set forth the title to the books and papers,—the application of Devlin as street commissioner,—and the threats of defendant Conover to remove the books from the office. Under such a state of facts, without reference to extrinsic matters, the application might well have been denied, and the supposition entertained that the street commissioner was perfectly able to protect the books and papers in the office, without the aid of a court of law or equity. In the complaint submitted to me, the plaintiffs show in addition that Conover is claiming to be street commissioner under an appointment which they have refused to recognize,—that he has

commenced proceedings for obtaining from Devlin the possession of this property,—that the magistrate before whom such proceeding is pending, has made an order for the delivery of the books to the defendant,—that the warrant therefor is about to be delivered to the defendant,—and that such seizure would expose them to being involved in liabilities and litigations. The rule as to second applications of this character is, that where new facts are stated in a supplemental bill, a fresh injunction may be awarded even though a former injunction has been dissolved upon the merits; and the same rule applies to a new action if the former one is discontinued (Fanning *v.* Dunham, 4 *Johns. Ch. R.*, 35). In Livingston *v.* Gibbons (4 *Johns. Ch. R.*, 257), the chancellor denied a motion to renew an injunction which had been dissolved, because the plaintiff had consented thereto : at the same time he says, "I mean only to say that upon this motion, without any new and special reasons not existing when the injunction was dissolved, I shall not consent to renew the injunction." In Cummins *a.* Bennett (8 *Johns. Ch. R.*, 78), Chancellor Walworth says, "If the complainant had any grounds to justify the issuing of a new writ, he should have discontinued the first suit and paid the costs, and then have applied to the court before the second bill was filed for such new injunction." A case very much in point may be found in Wood *a.* Bruce (9 *Gill & J.*, 215). In this case a bill had been filed, and an injunction obtained, which was afterwards dissolved by the chancellor. Some time afterwards an application was made to another court, on a new bill, and a new injunction obtained. On motion, the chancellor dissolved the second injunction, on the ground that the cause of action was the same. The plaintiff appealed, and on such appeal the order of the chancellor dissolving the second injunction was reversed. The court, in their opinion, say, "The question is whether the case made by the first and by the second bills are identical. Between the dismissal of the first and the institution of the second suit a litigation had commenced in a court of law, which in its event might deprive the complainant of his property. For any thing which appeared in the first bill, the complainant might never have been in any manner disturbed in his possession. The claims there set up might never be attempted to be enforced in the proper tribunal."

The reasoning in that case is very appropriate to the one under consideration. The complaint submitted to Judge Roosevelt only suggested as the reason for the injunction the threat of the defendant to take the books, &c. For aught that appeared therein, that threat might never have been carried into execution. Since the institution of that action, a litigation before a magistrate has sprung up, which was about to deprive the plaintiffs of their property against their will, and to which they were not even parties. They have no adequate means to prevent the injury but by a resort to a court of equity. Another reason given for the dismissal of that complaint was, that Conover, if street commissioner, could be removed by the Mayor and Board of Aldermen. Such removal, however, can only be for cause, if that section is applicable to the present tenure of office, and affords no answer in a case where the plaintiffs refuse to recognize the right of the defendant at all to the office. The reasons given for continuing the injunction against Conover apply to those defendants who have since been made parties by a supplemental complaint, and have interfered with the property.

Mr. Field, the counsel for Conover, is included as a defendant. Of the propriety of such a course, where nothing else is alleged against him, than the prosecution of the rights of his clients, I entertain much doubt. It is not necessary to the protection of the plaintiff's rights, and its effect is to make advocates parties where they should have no personal interest. I have looked over the evidence in this case, but do not find that the defendant Field has done any thing except what falls strictly within his province as counsel. His course in regard to the injunction was not to be approved; but that furnishes no reason for continuing the injunction against him.

The injunction is continued against all of the defendants except the defendant Field, and as to him it is dissolved.